IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARLOS A. MONTANEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15-cv-1397-NJR-MAB |
| | ) |
| DR. JOHN TROST, DR. STEPHEN RITZ, | ) |
| GAIL WALLS, KIMBERLY BUTLER, | ) |
| TODD BROOKS, and | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a Report and Recommendation of United States Magistrate Judge Mark A. Beatty (Doc. 171), which recommends that the Motion for Summary Judgment filed by Defendant Dr. John Trost (Doc. 139) be denied, the Motion for Summary Judgment filed by Defendants Gail Walls, Kimberly Butler, and Todd Brooks (Doc. 141) be granted, and the Motion to Strike filed by Defendant Trost (Doc. 149) be denied. The Report and Recommendation was entered on March 29, 2019 (Doc. 171). On April 12, 2019, Defendant Trost filed an objection (Doc. 180). Montanez also filed an objection to the Report and Recommendation (Doc. 181).

## BACKGROUND

Montanez, an inmate of the Illinois Department of Corrections, complains of conduct that took place while he was incarcerated at Menard Correctional Center. Montanez alleges

that he was assaulted by an inmate at Menard and then taken to a local hospital until he was transferred to Barnes-Jewish Hospital in St. Louis, Missouri ("Barnes") for treatment. While at Barnes, medical personnel diagnosed Montanez with multiple fractures on the right side of his face (Doc. 145-5, p. 9). On October 8, 2015, Montanez was discharged from Barnes with a recommendation to consult Ophthalmology for "possible blunt trauma to the globe." (Doc. 140-1, p. 2). He was also discharged with instructions to have a CT scan to diagnose further injuries and make follow-up appointments to be seen by the Ophthalmology Clinic at Barnes within two to three weeks and the Plastic Surgery Clinic at Barnes within one week (Doc. 145-5, p. 15).

Following his discharge on October 8th, Montanez was transferred to Menard's Health Care Unit ("HCU"), where Dr. Trost assumed responsibility for his care (Doc. 145-3, p. 8). On October 14, 2015, Dr. Hager, a medical professional at Menard, evaluated Montanez and agreed with the recommendation from Barnes that Montanez needed follow-up care (*Id.* at p. 15; Doc. 180-1). Montanez also reported experiencing blurry vision, pain, nausea, difficulty with eye movement, and double and quadruple vision ("diplopia") (Docs. 140-2, 140-3, 140-5). Dr. Trost then recommended that Montanez be seen by an ophthalmologist and Dr. Ritz, a physician working for Wexford Health Sources, Inc. ("Wexford"), approved the recommendation (Docs. 140-2, 140-3, 140-4).

On November 5, 2015, Menard personnel scheduled an appointment for Montanez to be seen by Dr. Mark Nekola, an ophthalmologist with Quantum Vision, on November 24, 2015 (Doc. 140-2). Dr. Nekola evaluated Montanez and provided the following assessment: "Mr. Montanez gives conflicting symptoms but I do think he has an orbital floor fracture on

the left side. There is no restriction to movement on exam. That said I would have an ENT take a look at x rays/scans to decide if it needs repair." (*Id*. at p. 13).

On November 25, 2015, in accordance with Dr. Nekola's recommendation, Dr. Trost wrote a request for Montanez to be seen by an ENT, and the request was approved by Dr. Ritz (Doc. 140-2). The ENT declined to see Montanez, however, and recommended that he be seen by a plastic surgeon instead (Doc. 140-3, p. 5; Doc. 140-5).

On December 7, 2015, Menard medical personnel scheduled an appointment with Plastic Surgery Consultants for Montanez to be evaluated on December 17, 2015 (Doc. 140-2). Dr. Richard Hehmann, a plastic surgeon employed at Plastic Surgery Consultants, evaluated Montanez and recommended that he be seen by an oculoplastic surgeon to determine whether his double vision would benefit from surgery (Doc. 140-7).

Dr. Trost then requested a referral for an outside specialist, which Dr. Ritz approved on January 6, 2016 (Doc. 140-2). Menard's scheduling office had difficulty scheduling the appointment because outside providers refused to treat Montanez (Doc. 140-2, p. 16). Dr. Trost again requested a referral for an outside specialist, which Dr. Ritz approved on January 15; the Menard scheduling office then made an appointment for Montanez to be seen by an ophthalmologist (*Id*.).

On February 1, an ophthalmologist evaluated Montanez, noted that Montanez was experiencing diplopia in all directions except with his straight forward gaze, and suggested that he "would not pursue surgical correction." (*Id*. at p. 29). On March 17, in accordance with that recommendation, Dr. Couch, an oculoplastic surgeon, evaluated Montanez and concluded that he has "no limitation in eye movement in the medial and lateral gaze . . . I do

not see signs or symptoms to suggest that the diplopia has been caused by fracture." (*Id*. at p. 31). Dr. Couch then recommended a "repeat of a CT scan of his orbits and return to discuss this further in the near future." (Doc. 145-7, p. 3).

In April 2016, Montanez fell when climbing down from the top bunk, and he alleges this was due to his double vision (Doc. 145-7). After the fall, Menard medical personnel evaluated Montanez for his shoulder pain and provided him with pain medication (Doc. 140-2). On May 26, Dr. Trost evaluated Montanez and recommended physical therapy (*Id*.). Dr. Ritz approved physical therapy and, in July 2016, medical personnel from the Southern Illinois Health Care Rehabilitation Institute of Chicago treated Montanez (*Id*.). In August, Montanez started to refuse physical therapy sessions because he believed that it was not helping his shoulder (*Id*.). On October 13, Montanez met with an optometrist to obtain new glasses to help address his vision issues, but the optometrist noted in his report that Montanez "refuses new gls litigation @ menard . . . ." (Doc. 140-8).

## THE REPORT AND RECOMMENDATION

Judge Beatty recommends denying the Motion for Summary Judgment filed by Dr. Trost because a reasonable jury could find that Dr. Trost's conduct regarding Montanez's care amounted to deliberate indifference. Judge Beatty reasoned that Dr. Trost delayed a follow-up with a plastic surgeon and thus a jury could find that he consciously disregarded the risks associated with such delay.

Judge Beatty also recommends granting the Motion for Summary Judgment filed by Brooks, Butler, and Walls because no reasonable jury could find that their conduct amounted to deliberate indifference. Judge Beatty points out that Brooks, Butler, and Walls are all non-

medical defendants who are entitled to reasonably rely on the expertise of medical professionals. As to Brooks, the assistant warden, Judge Beatty specifically found that, even assuming Brooks was aware of the emergency grievance filed by Montanez, Montanez had received treatment from several medical professionals by January 2016 and thus it would not be evident to a layperson such as Brooks that Montanez may have been receiving inadequate medical care. As to Walls, the Health Care Unit Administrator, Judge Beatty found that she investigated and responded to Montanez's complaint and, given the record and amount of physicians Montanez received treatment from, it would not be evident to a layperson such as Walls that Montanez may have been receiving inadequate medical care. As to Butler, the warden, Judge Beatty similarly found that, given the record, it would not be evident to a layperson that Montanez may have been receiving inadequate medical care.

Finally, Judge Beatty recommends denying the Motion to Strike filed by Dr. Trost indicating that he is not inclined to strike the counter-statement of facts filed by Montanez.

## DISCUSSION

The parties have filed timely objections to the Report and Recommendation as to the motions for summary judgment. Defendant Trost does not object, however, to Judge Beatty's Report and Recommendation as to the motion to strike. When timely objections are filed, the Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). This requires the Court to look at all evidence contained in the record and

give fresh consideration to those issues to which specific objections have been made and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). When objections are not made, the undersigned District Judge need not undertake *de novo* review. 28 U.S.C. § 636(b)(1)(C); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 741 (7th Cir. 1999). Instead, the Court should review the Report and Recommendation for clear error. *Johnson*, 170 F.3d at 739. The Court may then "accept, reject or modify the magistrate judge's recommended decision." *Harper,* 824 F. Supp. at 788. Accordingly, the Court will conduct a *de novo* review of the Report and Recommendation as to the motions for summary judgment and a clear error review of the Report and Recommendation as to the motion to strike.

### I.    Motion for Summary Judgment filed by Dr. Trost

First, Dr. Trost objects to Judge Beatty's conclusion that there is a material issue of fact regarding whether Dr. Trost was deliberately indifferent to Montanez's serious medical need.[1] Judge Beatty concluded that Dr. Trost knew of Barnes's recommendation for Montanez to see a plastic surgeon for follow-up within a week of his discharge, yet Dr. Trost waited two months to refer Montanez to a plastic surgeon. In support, Judge Beatty relied on

---

[1] The parties do not dispute that Montanez suffered a serious medical need, so the issue is whether Dr. Trost was deliberately indifferent to that need.

the *Zaya* case, among others. *See Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016); *see also Gil v. Reed*, 381 F.3d 649, 663-64 (7th Cir. 2004); *see also Jones v. Simek*, 193 F.3d 485, 490-91 (7th Cir. 1999).

In *Zaya*, the Seventh Circuit Court of Appeals reversed a district court's grant of summary judgment in favor of the defendant doctor who delayed treatment of the plaintiff's broken wrist. *Zaya*, 836 F.3d at 803. An outside orthopedic surgeon sent the plaintiff back to the prison with instructions that he return in three weeks for a follow-up exam and additional x-rays. *Id*. The defendant doctor waited nearly seven weeks before complying—a four-week delay. *Id*. The Court of Appeals found that the defendant doctor disregarded rather than disagreed with the recommended course of treatment. *Id*. Despite acknowledging receipt of the instructions from the outside orthopedic surgeon that the plaintiff return in three weeks, and despite being fully apprised of the risks associated with delaying treatment, the defendant doctor nonetheless delayed treatment. *Id*. at 806-807.

Here, Montanez was placed under Dr. Trost's care with instructions from Barnes to be scheduled for a follow-up with a plastic surgeon within one week (Doc. 145-5, p. 15). Dr. Hager also examined Montanez after his return to Menard and agreed with the recommendation that Montanez receive the follow-up care as scheduled (Doc. 180-1). Dr. Trost acknowledged that medical issues related to orbital bone fractures must be dealt with, and the related diplopia was a problem that requires attention (Doc. 145-3, pp. 9, 13). But Dr. Trost delayed more than two months before referring Montanez to a plastic surgeon. On December 7, 2015, Menard medical personnel finally scheduled an appointment with Plastic Surgery Consultants on March 17, 2016. Montanez was examined by an oculoplastic

surgeon, Dr. Couch, who recommended a repeat CT scan and a follow-up in the near future (Doc. 145-7, pp. 2-3). The medical records do not indicate that Montanez received the recommended CT scan and follow-up appointment before his transfer from Menard in November 2016 (Doc. 145-3, p. 17).

Dr. Trost argues that *Zaya* is distinguishable to the facts of this case for the following reasons: there was express knowledge of the defendant's receipt of the instructions; there was mention of specific risks associated with delay; and the defendant continued treating the plaintiff within the facility without making arrangements for return. Dr. Trost argues that none of those facts are present in this case.

The Court does not find that this case falls outside of the purview of *Zaya*. As to Dr. Trost's argument that he had no knowledge of the Barnes records or Dr. Hagar's recommendation, this is a question of fact for the jury. *Id*. at 805 ("Whether a prison official was subjectively aware of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ."). A reasonable jury could certainly conclude that Dr. Trost did have knowledge based on the following facts, when considered together—the fact that the Barnes records list Dr. Trost as Montanez's care provider (Doc. 145-5, p. 10); Dr. Trost's testimony that he holds ultimate responsibility for a patient's medical care once that patient is brought to see him (Doc. 145-3, p. 8); and Dr. Trost's testimony that Montanez's medical records "are the type of records upon which I rely in making medical decisions," (Doc. 143-1, p. 2), that he was notified of Montanez's return to Barnes on October 8, 2015, and that he prescribed medication for Montanez that same day (Doc. 145-3, p. 14; Doc. 143-1, p. 2).

As to Dr. Trost's argument that the recommendations in this case were general recommendations for follow-up care and failed to include "any specific risks associated with delay," the Court does not find this distinction to be significant. In *Zaya*, the Court of Appeals recognized that a jury "can infer conscious disregard of a risk from a defendant's decision to ignore instructions from a specialist," because "[i]nstructions from a specialist are evidence that the defendant knew a particular course of treatment was recommended by at least one other medical processional *at the time* the defendant chose not to provide that treatment." *Zaya*, 836 F.3d at 806 (emphasis in original). This highlights the significance of the instructions themselves. Although the specialist in *Zaya* also "described the risks of further delay," the Court noted that this was going "a step further." *Id*. In the other cases cited by Judge Beatty, the Court of Appeals has "cited the refusal to provide the treatment ordered by the specialist as facts sufficient to survive a motion for summary judgment." *Gil v. Reed*, 381 F.3d 649, 663 (7th Cir. 2004) (citing *Jones v. Simek*, 193 F.3d 485, 491 (7th Cir. 1999)).

As to Dr. Trost's argument that he referred Montanez to various outside doctors such as an ophthalmologist and an ENT, the Court points out that none of these doctors was a plastic surgeon. The October 8, 2015 recommendation by the specialist directed that Montanez be seen at the Ophthalmology Clinic within two to three weeks of discharge and the Plastic Surgery Clinic within one week of discharge (Doc. 145-5, p. 15). Montanez was not referred to a plastic surgeon until December 7, 2015 (Doc. 140-2, p. 14).

Lastly, Dr. Trost argues that Judge Beatty erred in citing to Dr. Yoo's expert opinions in denying summary judgment for the reasons set forth in his pending *Daubert* motion. But even if Dr. Yoo's opinions are not considered at this stage, the Court finds that sufficient facts

exist to preclude summary judgment. Thus, Dr. Trost's request for summary judgment is denied.

**II.     Motion for Summary Judgment filed by Defendants Brooks, Walls and Butler**

Montanez first objects to Judge Beatty's factual statement that Dr. Couch "recommended a 'repeat of a CT scan of his orbits and return to discuss this further in the future.'" (Doc. 171, p. 5). Montanez clarifies that the complete recommendation of Dr. Couch states as follows: "I have recommended repeat of a CT scan of his orbits and return to discuss this further in the ***near*** future." (Doc. 145-7, p. 3) (emphasis added). This objection is sustained, and the Court has incorporated the full statement in its factual findings set forth above.

Montanez also objects that a reasonable jury could find that Brooks, Walls, and Butler were deliberately indifferent to Montanez's serious medical needs. Judge Beatty considered and rejected the same arguments that Montanez makes in his objection. The Court of Appeals has explained: "We have long recognized that the division of labor within a prison necessitates that non-medical officials may reasonably defer to the judgment of medical professionals regarding inmate treatment." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019). In *Diggs v. Ghosh*, the case cited by Montanez, the Court of Appeals explained that "[a]s a layperson, the warden could rely on the medical staff's expertise as long as he did not ignore [the plaintiff] or his mistreatment. *Diggs v. Ghosh*, 850 F.3d 905, 911 (7th Cir. 2017).

As to Brooks, Montanez vaguely testified that he sent Brooks an emergency grievance and asked Brooks about it in person (Doc. 145-5, p. 7-8), but this testimony is insufficient to show that Brooks had knowledge of Montanez's complaints relating to medical treatment.

Montanez merely states that he asked Brooks about unanswered grievances, he does not state that he asked Brooks about his medical treatment. Also, a reasonable jury could not find that Butler or Walls ignored Montanez's complaints. There is no factual dispute that Montanez was receiving care from specialized medical professionals, and Defendants, as non-medical laypeople, were entitled to rely on those professionals.

<h2 style="text-align:center">CONCLUSION</h2>

For these reasons, after conducting a *de novo* review of the objections to Judge Beatty's Report and Recommendation as to the motions for summary judgment and a clear error review of the Report and Recommendation as the motion to strike, the Court **ADOPTS** Magistrate Judge Beatty's Report and Recommendation (Doc. 171), **DENIES** the Motion for Summary Judgment filed by Defendant Dr. John Trost (Doc. 139), **GRANTS** the Motion for Summary Judgment filed by Defendants Kimberly Butler, Todd Brooks, and Gail Walls (Doc. 141), and **DENIES** the Motion to Strike filed by Defendant Dr. John Trost (Doc. 149). Defendants Butler, Brooks, and Walls are **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly at the conclusion of the entire action.

A telephone status conference is scheduled to take place before the undersigned at **1:30 p.m. on Monday, May 20, 2019**, for the purpose of discussing disposition of the remaining pending motions,[2] the upcoming final pretrial conference and jury trial dates, and

---

[2] The Court notes that Dr. Ritz and Wexford have also moved for summary judgment (Doc. 174); that motion only recently became ripe. The Court awaits a Report and Recommendation from Judge Beatty on the motion. There are also two motions to exclude the testimony of Plaintiff's expert witness Dr. Yoo (Docs. 177, 179), which also recently became ripe. Now that Defendants Butler, Brooks, and Walls have been dismissed, their motion (Doc. 179) is **DENIED as moot**. The Court will seek input from counsel concerning whether a hearing on the motion to exclude filed by Dr. Ritz, Dr. Trost, and Wexford (Doc. 177) is necessary.

whether a settlement conference would be beneficial.

**IT IS SO ORDERED.**

**DATED: May 17, 2019**

s/ Nancy J. Rosenstengel_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**
